Boynton, J.
It is the opinion of a majority of the court, that the referee erred in rejecting the payments or advances made by Denton and Chattle, for the lumber manufactured, prior to June 15, 1861, to Sherman, and to Marsh. If unaffected by the contract of that date, the right to an allowance for such advances, by Denton and Chattle, in a settlement of the business transactions between them and the Whitneys, was perfect; and there is nothing in the contract to warrant the inference that such right was relinquished or parted with. It is not claimed, that the contract provides in express language, that Denton and Chattle, in the settlement which was to take place within ninety days from-the date of the contract, were not to have credit for all sums paid to Sherman, and to Marsh, on account of the joint adventure; but an undertaking to that effect is sought to be deduced from the following stipulation in the contract:
“ The said Chattle and Denton agree and promise to and with the said William E. and Vincent Whitney to fulfill and perform the existing contract between them and said Sherman for the manufacture of lumber by said Sherman, in all things yet remaining to be done on the part of said Whitneys.”
The meaning of this stipulation is to be ascertained from the language employed to express it, in conjunction with the context, interpreted in the light of the circumstances in which the parties were placed at the time the contract was made. The Whitneys were under a joint obligation with Denton and Chattle to pay to Sherman the sum of $5 per thousand feet, for all lumber he should manufacture from the lands described in his contract. And that liability continued to subsist after the sale to Denton and Chattle- as before;. and unless released by Sherman, would contiuue to subsist until all the timber to be manufactured was exhausted, or the contract should be terminated in the manner provided by its terms. By the transfer of their title in. the timber lauds, to Denton and Chattle, their interest in the lumber to be manufactured necessarily ceased to exist; *95 but their liability to pay for the future manufacture still remained. Large sums would become due to Sherman for subsequent manufacture, and as their interest in the business was at an end, it was only natural to provide, that, as between them and Denton and Chattle, the latter should step into their shoes, as to all matters connected with the future performance of the Sherman contract. Denton and Chattle, therefore, agreed, in the language of the contract, “to and with said William E. and Vincent Whitney, to fulfill aud perform the existing contract betweeu them and said Sherman for the manufacture of lumber, by said Sherman, in all things yet remaining to be done on the part of said Whitneys.”
That this language was employed for the sole purpose of indemnifying and protecting the Whitneys against liability under the Sherman contract, for the future manufacture of lumber, is quite obvious from several considerations. The business of the manufacture of lumber was not the subject of negotiations. The parties did not contemplate a present adjustment of past transactions. The subject matter of transfer was land. This transfer necessarily terminated the joint adventure, in which the parties before, and up to that time, had been engaged. The minds of the parties were naturally directed to a settlement of past business relations. Hence it was provided, that “ all accounts and transactions of a date prior to this of the said Corwin, Den-ton, and Roberts and Chattle, with said Whitneys, shall be settled and closed by said Denton and Chattle on the part of said Corwin, Roberts, Denton and Chattle, and said Whitneys qn their part, within ninety days from this day: said settlement shall be made upon the basis of the legal and equitable rights and according to the facts now existing.”
All accounts and all transactions of a prior date, between the Whitneys aud Corwin, and between them and Corwin, Roberts, and Denton, and between them and Denton and Chattle, were to be settled by the Whitneys on their part, and Denton and Chattle on the part of all the other parties. *96 The Whitneys having cut loose from the business, two things remained to be done to a complete dissolution of the joint relation. One was to settle and adjust all matters of account connected with past operations; and the other to secure the assumption by Denton and Chattle of their entire liability to Sherman, in all things pertaining to the future manufacture’of lumber. Such settlement was provided for upon the expressed basis of the legal and equitable rights of the parties, and in accordance with the facts then existing; and such assumption was provided for in the language embraced in the stipulation above quoted. Among the facts then existing was the important one, that Denton and Chattle had paid to Sherman, and to Marsh, nearly the entire amount of the rejected items. The balance they were liable for and subsequently paid. These facts were undisputed and undenied. But a place was refused them in the settlement, because of the agreement by Denton and Chattle to perform the existing contract with Sherman in all things remaining to be performed, and upon the supposition that this required Denton and Chattle to make no claim for such payments in such settlement. It is also said that the contract itself was one of the facts then existing, and that the “ agreement to settle upon the basis of legal and equitable rights, necessarily implies as an exception,' every modification of those rights made by the contract itself.” Granting that the existence of the contract is a fact to be considered, it by no means results in the construction contended for.
It still leaves to be decided, what was meant by the language obliging Denton and Chattle to fulfill and perform the existiug contract with Sherman, in “ all things yet remaining to be done on the part of said Whitneys.”
At the date of the contract there was but a small amount due to Sherman for previous manufacture of lumber. The payment in full of the amount then due him would have required but a small portion of the sum rejected and disallowed, yet the referee not only refused to credit Denton and Chattle writh this sum, but he rejected the entire amount *97 paid to Sherman, as also that paid to Marsh, prior to the-date of the contract. He rejected not only what remained' to be done under the Sherman contract, but that which had. already been done under it. And also that which had beem paid under the Marsh contract. The principle upon which. past advances were excluded from the account, the undertaking being to fulfill the contract only as to those things-remaining to be done on the part of the Whitneys, is not easily comprehended.
It is quite as difficult to understand upon what principle- or theory of construction the advances or payments made by Denton and Chattle to Marsh for rafting lumber, prior to-June 15, 1861, were disallowed. There is not a word in the contract affording the slightest basis for the inference-that Denton and Chattle agreed to disclaim or relinquish, in the settlement to take place, the payments thus made to-Marsh. These payments, exceeding $2,000, were all excluded. All that is said in argument, in vindication of the correctness of this ruling, is, that “ as the expense of' rafting the lumber to market, after it was manufactured by Sherman, was one of the actual and natural consequences-of the transaction, and necessary to its completion, the payment to Marsh may well be considered as one of the-things then in the contemplation of the parties and ‘yet remaining to be done on the part of said Whitneys,’ in fulfillment and performance of the existing contract for the-manufacture of lumber.” That is to say, an undertaking to perform the Whitneys’ contract with Sherman, in all things by them remaining to be done, involves the duty to-pay Marsh for transporting the lumber to market, as the expense of so doing was one of the actual and natural consequences of the transaction, and necessary to its completion. This reasoning is not satisfactory. The assumption by Denton and Chattle of the obligation of the Whitneysto Sherman did not affect the relation of the parties to the-Marsh contract in the least respect whatever.
Further support of the construction contended for by the- *98 'defendants is sought from the fact that the Whitneys assigned to Denton and Ohattle all claims and demands which they had against Sherman and Marsh; counsel adding, that “ the purpose for which the assignment of these •claims was made is evident enough, though not expressed;” that it was “ to enable Denton and Ohattle to make a final •settlement of all things yet remaining to be done under the •contract with Sherman and Marsh, whether by the Whit:neys or by Denton and Ohattle.” It wonld seem to me •much more reasonable to suppose, that the object of the transfer or assignment was to enable Denton and Ohattle to reach a settlement with Sherman and Marsh *of those vthings already done, rather than those things remaining to he performed in the future. That this was the purpose :seems clearly obvious; for, in a subsequent clause of the contract, it is expressly provided that the Whitneys, in the ¡settlement to be made, shall receive a credit for the claims .so assigned against Sherman and Marsh, a fact tending to •■show that in such settlement the relation and rights of the parties then existing, as to advances made on the contract with Sherman, and the one with Marsh, were not to be •changed, but that each had and continued the right to •charge up to the other one-half the advances by such party made in the joint business.
The inference that such was the object of the assignment becomes more obvious when it is considered that the assignment of advances made to Marsh by the Whitneys would not be of the least value to Denton and Chattle in the performance of the Sherman contract, in those things •then remaining to be performed by the Whitneys thereunder.
Finally, the contract, in terms, declared that the Whitneys should also be credited with $500, “ the consideration •of this conveyance.” Viewing the contract in all its parts, in the light of the relation of the parties, and the accompanying circumstances, we are led to the conclusion that there is no such ambiguity, or uncertainty in its terms, or in the meaning they express, as justifies the admission of the *99 oral testimony received by tbe referee. Such testimony must have controlled his action in excluding the disputed items. The contract, as written, must speak for itself.
The effect of the testimony received was to add an independent stipulation to its terms, which entirely changed its legal operation. If the contract, as reduced to writing, contains what was not intended, or omits what it was intended to contain, the remedy for such mistake, in an action to enforce the contract, is not to be found in receiving the parol declarations of the parties. In such action the presumption is conclusive that the contract, as written, contains and embodies the agreement as made. The court, in special term, should have sustained the exceptions to the report of the referee for excluding the amounts paid by Denton and Chattle to Sherman and Marsh for lumber manufactured prior to the date of the contract. In refusing so to do, and in rendering a judgment on the report, it committed error, as did the court in general term in affirming its judgment.
Judgment of the general and of the special terms reversed, and cause remanded to the special term for further proceedings.